In the Matter of the Claim of DEBRA DALY, Respondent, v OPPORTUNITIES FOR BROOME, INC., et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, May 15, 1975

*Kramer, Wales & McAvoy (Robert W. Hillis* of counsel), for appellants.

*Joseph Hester (Jefferson F. Meagher* of counsel), for Debra Daly, respondent.

*Louis J. Lefkowitz, Attorney-General (Jorge L. Gomez* and *Daniel Polansky* of counsel), for Workmen's Compensation Board, respondent.

REYNOLDS, J. This is an appeal by the employer and its insurance carrier from a decision of the Workmen's Compensation Board, filed April 12, 1973, on the ground that the claimant did not sustain an accident arising out of the course of her employment and that she was not an employee within the meaning of the Workmen's Compensation Law.

In April of 1970 the Binghamton State Hospital decided that claimant, then 16 years of age and who had been hospitalized since the prior September with a long history of obsessive compulsive neurosis, should locate employment and be discharged from the hospital. A guidance counselor at the hospital felt that the claimant should work at a job prior to her discharge "so that she would have a couple of weeks to adjust to a job situation before being sent home to live" and, accordingly, contacted appellant, Opportunities for Broome, Inc., which in turn made arrangements for the claimant to work as a kitchen aid in the Garvin Building of the very hospital in which she was confined. The claimant commenced work on April 23, 1970 and was paid $1.50 per hour by Opportunities for Broome, Inc. While so employed, the claimant continued to reside in the hospital as a patient and was still taking medications prescribed for her psychiatric treatment. On April 27, 1970, her fourth day at work, at approximately 5:00 P.M. while working in the hospital kitchen, the

claimant fell to the floor and struck her head. The claimant was then taken to the Binghamton General Hospital where it was diagnosed that she suffered from a fractured skull. Following surgery, the claimant was totally disabled and presently remains in that condition.

At a subsequent hearing the only actual witness to what occurred testified that she heard a sound from the claimant and then observed the claimant with arms outstretched fall backward to the floor. However, that witness testified that she did not observe any cause for the fall. It was also determined, however, that the claimant had been taking 75 milligrams of Mellaril, a tranquilizer, and 50 milligrams of Tofranil, an antidepressant, three times a day at the time of the accident, and had been taking such medication in stronger dosages for some period of time prior to commencing work, and the claimant's attending psychiatrist clearly testified that this medication was the precipitive cause of the fall. The only other possibly pertinent testimony came from the neurosurgeon who performed the operation on claimant to the effect that he did not know why she fell. On this record the Referee concluded "[T]he evidence is uncontradicted that claimant was taking medication for a specific condition which antedated her fall, and which medication was appropriately designated by all the medical evidence, including claimant's own consultant, as being the vehicle causing the fall originating the injuries herein complained of" and, accordingly, disallowed the claim. Upon review by the board, a majority reversed the Referee's decision based upon a finding "that the cause of the fall is not known" and that therefore the presumption under section 21 of the Workmen's Compensation Law applies to establish a compensable accident. From this decision the instant appeal ensued.

The appellants' argument that the claimant was not an employee of appellant Opportunities for Broome, Inc. at the time of the accident was not raised before or considered by the Workmen's Compensation Board and cannot therefore be raised for the first time in this court (*Matter of Shuler v City of Syracuse,* 40 AD2d 737; *Matter of Redder v Village of Clyde,* 21 AD2d 917; see, also, *Matter of Steffens v Moleston Fire Dist.,* 34 AD2d 848; *Matter of Gore v City of Ogdensburg,* 29 AD2d 599).

The issue of whether the accident arose out of the claimant's employment is not so easily resolved. Unquestionably,

the establishment of the fact that the fall was within the course of employment raised the presumption under section 21 of the Workmen's Compensation Law that it arose out of employment (e.g., *Birdsall v Peters,* 46 AD2d 11, 13), and the fact that the fall was actually witnessed would not, of course, affect the presumption where, as here, the witness could not help explain the fall (see *Matter of Bruni v International Term. Operating Co.,* 26 AD2d 887). To overcome the presumption the evidence presented "must do more than create doubt or set up noncompensable alternative explanation of the accident; it must be 'evidence such as a reasonable mind might accept as adequate to support a conclusion.' " (1 Larson, Workmen's Compensation Law, § 10.33[b]). In the present case the eyewitness and neurosurgeon assert that they do not know the cause of the fall. However, claimant's attending psychiatrist clearly testified that the fall was precipitated by the medication she was taking. There is absolutely no evidence in contradiction to the psychiatrist's unqualified opinion. The neurosurgeon testified only that he was unaware of the cause. Such testimony is not contradictory of the testimony of the psychiatrist. Moreover, there is evidence that claimant had previously suffered a similar fall just over two months prior to the fall here involved. There is thus substantial evidence in the form of uncontradicted medical testimony explaining the fall and not one shred of evidence to the contrary. The presumption under section 21 cannot thus control this case *(Matter of Dillon v Le Roy Mach. Co.,* 7 AD2d 767) and, accordingly, the decision of the board should be reversed and the claim dismissed.

The decision should be reversed, and the claim dismissed, with costs against the Workmen's Compensation Board.

GREENBLOTT, J. (concurring). I concur in the result but wish to explain my views on the applicability of the presumption under section 21. In my opinion the presumption under section 21 is meant to be employed where a fall is unwitnessed or where, though witnessed, the witness is unable to offer evidence as to what may or *may not* have caused the fall. Here the witness Sullivan, who was standing four feet from the claimant, testified that she heard claimant make a sound and "when I looked up when she made that sound, she was standing and the next thing I know she was going down. That was it." She further stated that "when I looked at her she started going out, with her hands outstretched * * * in a stiff

position" falling backward. While this testimony cannot explain any internal physiological reasons for claimant's fall, it is sufficient to establish that claimant did not fall because of any factors created by the work environment, and was not stricken by any objects so as to invoke the "added risk" doctrine. In my opinion, this evidence is sufficient to remove the case from the operation of the presumption because it does explain that work-connected elements were not possible causes of claimant's injuries. To invoke the presumption in such circumstances is contrary to the well-settled rule that the presumption cannot be employed as a substitute for actual proof. While this evidence itself does not, as the board found, explain the cause of the fall, it does support the conclusion that the fall had internal causes, which taken together with the testimony of Dr. Schubmehl constitutes the sole evidence in the case and can lead only to the conclusion that the fall did not arise out of the employment.

To further understand the applicability of the presumption, this case should be compared with *Matter of Casucci v Community Carting Co.* (48 AD2d 725 [decided May 8, 1975]). There, the deceased, who was obviously in the course of his employment at the time of the events leading to his claim, was found dead, and nobody was able to testify as to whether or not he had actually commenced any lifting or pushing prior to his fatal seizure. In those circumstances, since there was no evidence which could eliminate work-related activities as a possible cause, the presumption should have been invoked, wherefore we held that it was error for the board to deny compensation upon a finding that the claimant had failed to prove that the deceased's death arose out of and in the course of the employment.

HERLIHY, P. J. (dissenting). The claimant's supervisor testified that she and the claimant were working together in a kitchen at the time of the claimant's fall. Immediately preceding the fall the supervisor testified that the claimant was stacking trays when she made a sound which caused the supervisor to look at her; "she started going out, with her hands outstretched like this, in a stiff position." The claimant fell backwards to the floor with her hands continually outstretched.

One of the medical experts, Dr. Kuper, testified that in his opinion as a neurosurgeon, the cause of the fall was medically unknown, however, in his opinion her outstretched arms at

the time of the fall indicated that perhaps it was related to the claimant's underlying mental condition of schizophrenia. The other medical expert, Dr. Schubmehl, was of the opinion that the medication which the claimant was taking in and about the time of the fall had been known to cause a loss of balance and, accordingly, it was his opinion that there being no other explanation for the fall, it was caused by the medication. The doctor testified that the claimant's hands may have been outstretched in a rigid position simply "as an effort to compensate if she felt herself unsteady". It was apparent that although one of the doctors felt that the rigidity of the arms and hands might indicate an ideopathic cause for the fall, the other doctor was of the opinion that it was merely a reaction to unsteadiness.

The majority opinion fails to grant any weight to the uncontradicted evidence that immediately preceding the fall the claimant was engaged in her work, and that upon the present record the claimant's loss of balance could have as readily been the result of some unexpected movement of the trays which she was handling or other factors related thereto as opposed to having been caused either by medication or an ideopathic condition. Upon the present record the evidence relied upon by the appellants to overcome the presumption under section 21 is certainly not overwhelming and, in fact, it does little more than create some doubt as to whether there was a causal connection between the employment and the fall.

The decision should be affirmed.

KANE, J., concurs with REYNOLDS, J.; GREENBLOTT, J., concurs in a separate opinion in which REYNOLDS, J., concurs; HERLIHY, P. J., and SWEENEY, J., dissent and vote to affirm in an opinion by HERLIHY, P. J.

Decision reversed, and claim dismissed, with costs against the Workmen's Compensation Board.